KEITH MYERS,

                Plaintiff,

v.                                          Case No. 23-cv-79-pp

WARDEN BRIAN FOSTER, JOSHUA M. ADDERTON,
DAVID A. DINGMAN, CODY S. GOULD,
JESSE S. JONES and EVAN C. WHITE,

                Defendants.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 12)

Keith Myers, who was incarcerated at Waupun Correctional Institution when he filed this case and is representing himself, filed a complaint alleging that the defendants violated his constitutional rights. The court screened the complaint and found that it failed to state a claim. Dkt. No. 7 at 6. The court gave the plaintiff an opportunity to file an amended complaint, which he did. Dkt. No. 12. This order screens the amended complaint.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

1

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in Amended Complaint

The plaintiff was incarcerated at Waupun Correctional Institution when the incident described in the amended complaint took place. Dkt. No. 12 at 2. He has sued Warden Brian Foster, Joshua M. Adderton, David A. Dingman, Cody S. Gould, Jesse J. Jones and Evan C. White. Id. at 1.

The plaintiff alleges that on June 14, 2019, Lieutenant Nelson and Officer John Doe (not defendants) escorted him to the restrictive housing unit to be placed on temporary lock up. Id. at 2. The plaintiff states that once he arrived in the restrictive housing unit, he was placed in a holding cell at which time he "became emotionally distraught and had a mental break from reality to the point where [he] began to display a chorse [sic] of self-harm." Id. He says that he felt something being sprayed in his eyes, his eyes started burning and he could not open them. Id. at 2-3. The plaintiff alleges that Lieutenant Dingman told him to stand up, come to the door and put his hands through the trap to be cuffed. Id. at 3. He allegedly found his way to the trap opening of the holding cell door with his eyes closed and placed his hands outside the trap. Id. The plaintiff states that he felt his arms and wrists grabbed and pulled "very aggressively" through the trap opening by Officer Jones and Officer Adderton. Id. The plaintiff alleges that he felt himself being cuffed and felt the door to the holding cell being opened. Id. Jones and Adderton allegedly grabbed and aggressively pulled the plaintiff out of the holding cell. Id.

3

Case 2:23-cv-00079-PP   Filed 11/22/23   Page 3 of 8   Document 14

The plaintiff alleges that once out of cell, he felt himself being pressed up against a wall as he was being held up by both arms by Jones and Adderton; he says he was being told by either Jones or Adderton told him that leg restraints would be placed on him. Id. at 4. He says he was being told by Lieutenant Dingman that Dingman's officers would conduct a staff-assisted search. Id. The plaintiff states that he replied that a staff-assisted search would not be necessary because he would comply with a "regular strip search," but that Dingman responded, "we are beyond that point!" Id. The plaintiff alleges that Officer White told him that he would be taking off his socks and shoes and the plaintiff then felt his socks and shoes removed. Id. at 4-5. Next, Officer White allegedly told the plaintiff he was going to remove his shirt and the plaintiff felt his shirt being cut away with scissors. Id. at 5. The plaintiff states that Officer White then told him that he would be removing his pants and the plaintiff felt his pants being cut off with scissors. Id. The plaintiff says that, as he continued to be held up by Jones and Adderton on either side of him, Officer White told him that he would be removing his underwear and he felt his underwear being cut off with scissors. Id. Adderton allegedly told the plaintiff that he would be checking his scrotum and the plaintiff felt his scrotum being touched and moved from side to side "without [his] consent." Id. The plaintiff states that Adderton told him that he would be checking his buttocks and he then felt his buttocks being touched, grabbed and spread "without [his] consent." Id. The plaintiff alleges that after the search, he was given something with which to cover himself and placed in observation. Id.

The plaintiff seeks $2.2 million in damages. Id. at 7.

C.  Analysis

To state a claim for excessive use of force under the Eighth Amendment, a plaintiff must allege that a defendant applied force maliciously and sadistically to cause harm rather than in a good faith attempt to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 668 (7th Cir. 2012). Factors relevant to a defendant's mental state include the need for force, the amount of force used, the threat reasonably perceived by officers, efforts made to temper the severity of the force, and the extent of injuries caused by the force. Whitley v. Albers, 475 U.S. 312, 321 (1986); Rice, 675 F.3d at 668. A "prisoner need not show a 'significant injury' in order to have a good claim under the [E]ighth [A]mendment, if a guard inflicted pain maliciously or sadistically." Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) (citing Hudson, 503 U.S. at 7). Liberally construed, the plaintiff states an excessive force claim based on his allegations that he was sprayed and forcibly removed from his cell after he had a mental break and began to display self-harm. He may proceed against Adderton, Dingman, Jones and White in their individual capacities.

The plaintiff's allegations regarding the staff-assisted strip search also implicate his constitutional rights. The Eighth Amendment safeguards incarcerated individuals against searches that correctional officers subjectively intend as a form of punishment. Henry v. Hulett, 969 F.3d 769, 781 (7th Cir. 2020). A strip search of an incarcerated person violates the Eighth Amendment

if its purpose is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification." Chatman v. Gossett, 766 F. App'x 362, 364 (7th Cir. 2019) (quoting Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004)). A strip search is penologically justified when it is reasonably related to finding contraband that threatens the safety and security of the prison. Id. (citing Peckham v. Wis. Dep't of Corr., 141 F.3d 694, 695, 697 (7th Cir. 1998)); Del Raine v. Williford, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994)).

The Eighth Amendment focuses on the defendants' subjective state of mind. Henry, 969 F.3d at 781. But the Fourth Amendment focuses on objective reasonableness, so "a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis." Id. "The Fourth Amendment thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." Id. When evaluating an incarcerated individual's claim involving a strip search under the Fourth Amendment, a court "must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" Id. at 779 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). The plaintiff may proceed against defendants Adderton, Dingman, Jones and White in their individual capacities under the Fourth and Eighth Amendments, based on the plaintiff's allegations regarding the way they conducted the strip search and their motivation for conducting it.

The complaint does not include any allegations against Foster or Gould. The court will dismiss them as defendants.

## II. Conclusion

The court **ORDERS** that Warden Brian Foster and Cody S. Gould are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint (Dkt. No. 12) and this order to the Wisconsin Department of Justice for service on defendants Joshua M. Adderton, David A. Dingman, Jesse S. Jones and Evan C. White. Under the informal service agreement, the court **ORDERS** that those defendants must file a responsive pleading to the amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that the plaintiff must submit the original document for all correspondence and case filings to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if his address changes. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 22nd day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**